IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

GERALD D. GIPAYA,                )      CIVIL 17-00502 LEK-KSC
                                 )
          Plaintiff,             )
                                 )
     vs.                         )
                                 )
DEPARTMENT OF THE AIR FORCE,     )
HEATHER WILSON, SECRETARY OF     )
THE AIR FORCE,                   )
                                 )
          Defendant.             )
_____ )

**ORDER GRANTING DEFENDANT'S MOTION
FOR DISMISSAL AND SUMMARY JUDGMENT**

On May 2, 2018, Defendant Heather Wilson, Secretary of
the Air Force ("Defendant"), filed her Motion for Dismissal and
Summary Judgment ("Motion"). [Dkt. no. 15.] Plaintiff Gerald D.
Gipaya ("Plaintiff") filed his memorandum in opposition on
July 9, 2018, and Defendant filed her reply on July 16, 2018.
[Dkt. nos. 18, 20.] This matter came on for hearing on July 30,
2018. On August 31, 2018, this Court issued an entering order
ruling on the Motion. [Dkt. no. 23.] The instant Order
supersedes that entering order. Defendant's Motion is hereby
granted for the reasons set forth below.

**BACKGROUND**

**I.   Complaint**

On October 6, 2017, Plaintiff filed his Employment
Discrimination Complaint ("Complaint"). [Dkt. no. 1.] Plaintiff

states served in the United States Air Force ("Air Force") from
1969 until his honorable discharge in 1977. He then worked for
the Air Force as a civilian employee from 1978 until his
retirement in 2005. In 2006, Plaintiff was hired as a reemployed
annuitant to be Quality Assurance ("QA") Specialist. At all
times relevant to this case, Plaintiff was employed as a QA
Specialist at Joint Base Pearl Harbor-Hickam, formerly known as
Hickam Air Force Base ("Hickam"). [Id. at ¶¶ 6-10.]

In August 2010, Plaintiff suffered a stroke, which
Defendant was aware of. He returned to work later that month,
but experienced limitations as a result of the stroke. [Id. at
¶¶ 11-13, 15.] According to Plaintiff, in spite of these
limitations, "he was able to complete his regular duties
effectively and on time," but he was also asked to perform
additional duties that were not part of his position description.
[Id. at ¶¶ 13-14.] Plaintiff alleges Defendant failed to provide
him with reasonable accommodations for his stroke-related
limitations. For example, Plaintiff was not provided with the
requested ergonomic chair for six months after his return to
work, and his June 29, 2012 email request to reduce his workload
to his original job duties was denied. [Id. at ¶¶ 15-18.]

Plaintiff alleges: in February 2013, he was one of
five reemployed annuitants who were notified they would be
terminated, effective March 2013; [id. at ¶ 20;] supervisors

2

could seek a waiver allowing a reemployed annuitant avoid termination, but no waiver was sought for Plaintiff; [id. at ¶¶ 21-22, 25;] and waivers were sought and approved for the other four reemployed annuitants, [id. at ¶ 23]. Thus, Plaintiff was the only reemployed annuitant who was terminated. [Id. at ¶ 26.] Plaintiff asserts that an waiver was not sought for him because he was the only reemployed annuitant who had a disability. [Id. at ¶¶ 24-25.] He also states he is of Native Hawaiian ancestry, and he was sixty-two years old at the time of the events in question. [Id. at ¶ 6.]

Plaintiff was terminated effective March 9, 2013. [Id. at ¶ 27.] Plaintiff filed an Equal Employment Opportunity ("EEO") Complaint on April 22, 2013. On December 17, 2013, he requested a hearing before the Equal Employment Opportunity Commission ("EEOC"). [Id. at ¶¶ 30-31.]

Plaintiff alleges three causes of action, each with multiple theories of liability. Plaintiff alleges violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII" and "Count I"), based on theories of: hostile work environment; race discrimination (Hawaiian/Pacific Islander); and retaliation. [Id. at ¶ 34.] Next, Plaintiff alleges violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 633a ("ADEA" and "Count II"), based on theories of hostile work environment and termination based on his age.

[Id. at ¶ 35.]  Finally, Plaintiff alleges the conduct described
in the Complaint constitutes disability discrimination, in
violation of section 504 of the Rehabilitation Act of 1973, 29
U.S.C. § 701, *et. seq.* ("Rehab Act" and "Count III").  [Id. at
¶ 36.]

## II.  **Relevant Facts**

Plaintiff's employment as a QA Specialist at Hickam is
undisputed.  [Def.'s Concise Statement in Supp. of Motion
("Def.'s CSOF"), filed 5/2/18 (dkt. no. 16), at ¶ 1; Pltf.'s
Concise Statement of Facts in Opp. to Def.'s Motion ("Pltf.'s
CSOF"), filed 7/9/18 (dkt. no. 19), at ¶ 1 (admitting Def.'s
¶ 1).]  Plaintiff's August 2010 stroke is also undisputed, as is
the fact that he continued to receive high ratings on his job
performance evaluations after returning to work.  [Def.'s CSOF at
¶ 2; Pltf.'s CSOF at ¶ 2 (admitting Def.'s ¶ 2 in part).]

### A.  **The Ergonomic Chair**

In late 2011, [Plaintiff] asked his
supervisor [Technician Sergeant Toby] Jones for an
ergonomic chair.  [Plaintiff] explained that he
needed the chair "because someone was playing with
my chair, and it makes it very hard for me to
adjust these things in the morning."  His request
did not refer to disability or to reasonable
accommodation.  Jones asked him to provide
information about what chair he wanted and where
to purchase it.  By the time [Plaintiff] provided
the information it was late in the fiscal year,
and the purchase had to wait until the new fiscal
year.  It took about five or six months for the
chair to be delivered.  [Plaintiff] did not
believe that anyone discriminated against him on

4

the basis of his race, age or disability in
        connection with the chair.

[Def.'s CSOF at ¶ 3; Pltf.'s CSOF at ¶ 3 (disputing Def.'s ¶ 3

only to the extent that Plaintiff asserts he "requested the

ergonomic chair because of his limitations after the stroke –

limited use of his hand/arm.").]

> **B.    The 6/29/12 Email**

        On June 29, 2012, Plaintiff emailed Master Sergeant

Albert Murphy ("6/29/12 Email").  [Def.'s CSOF, Decl. of

Thomas A. Helper ("Helper Decl."), Exh. 3 (6/29/12 Email) at 2-

3.[1]]  The 6/29/12 Email stated Plaintiff's concerns that: he

consistently worked more than other QA staff; he worked in excess

of his "Core Documents" – *i.e.*, job description; and management

knew others were unfairly shifting their workload to Plaintiff.

[Id. at 3.]  The email continued, "[t]hat needs to STOP right

now.  Here's to inform you, I too, am throttling back to my 10%

level," which was specified for Plaintiff's work on the Product

Improvement Program in his Core Document.  [Id. (emphasis in

original).]  The 6/29/12 Email further stated Plaintiff's

appointment did not qualify him for managerial duties, and

continued:  "I've rode solo from day one.  Core documents/TBA, no

one adheres to them?  If your position states to do this and this

---

        [1] Exhibit 3 is an email thread containing both Master
Sergeant Murphy's reply to the 6/29/12 Email and the 6/29/12
Email.

and that, step up and contribute." [Id.] The 6/29/12 Email "did

not refer to [Plaintiff's] national origin, disability or age."

[Def.'s CSOF at ¶ 4; Pltf.'s CSOF at ¶ 4 (only disputing other

portions of Def.'s ¶ 4).]

On July 10, 2012, Master Sergeant Murphy replied to the

6/29/12 Email. [6/29/12 Email at 1-2.] Master Sergeant Murphy

stated he had consulted with the civilian personnel department,

and disagreed with Plaintiff's concerns stated in the 6/29/12

Email because: 1) as Plaintiff's supervisor, Master Sergeant

Murphy was authorized to assign work as needed for mission

operations; 2) unless the assignments were illegal, unethical, or

immoral, Plaintiff was obliged to complete his assigned tasks;

3) the Core Document was not an exhaustive description of the

permissible work that an employee may be assigned. [Id. at 1-2.]

Master Sergeant Murphy concluded by warning that: "[b]latant

disregard for a direct order and/or failure to properly carry out

an assigned duty/task may result in disciplinary action taken

against you up to and including removal," and stated that he and

Plaintiff would meet in person, the next day, to verbally discuss

expectations. [Id. at 2.]

C.    **The Directive and Plaintiff's Termination**

For budgetary reasons, the Air Force directed all of

its components to separate certain civilian personnel, including

reemployed annuitants ("Directive"). A reemployed annuitant is

6

an employee who is receiving a federal pension while employed with the Air Force.  Plaintiff was a reemployed annuitant.  The Directive "provided an exception for employees whose skills were 'mission critical.'"  [Def.'s CSOF at ¶ 5; Pltf.'s CSOF at ¶ 5 (admitting Def.'s ¶ 5).]

Colonel Michael Novotny was the Commander of the Fifteenth Maintenance Group and was Plaintiff's fourth level supervisor.  At the time of the Directive, there were two reemployed annuitants under Colonel Novotny's command:  Plaintiff and Fuel Systems Specialist Roger Horiuchi ("Horiuchi").  Colonel Novotny was assigned to recommend whether each was mission critical.  [Def.'s CSOF at ¶ 6; Pltf.'s CSOF at ¶ 6 (only disputing Def.'s ¶ 6 insofar as "Human Resources advised that the command could not provided exception packages for every reemployed annuitant.").]

Colonel Novotny approved a waiver request for Horiuchi, who "was the QA Specialist responsible for evaluating the maintenance performed by the Fuels Systems Maintenance Shop, which was responsible for the essential task of ensuring that aircraft fuel systems worked properly."  [Def.'s CSOF, Decl. of Michael Novotny ("Novotny Decl.") at ¶ 4.]  Horiuchi had current certifications necessary for his job, and there were only a few individuals in the unit, whether uniformed or civilian, who could perform the QA work Horiuchi did.  [Id.]  Colonel Novotny did not

approve a wavier request for Plaintiff, whose work involved investigating incidents in which damage had occurred to airplanes. Plaintiff's work "was more administrative in nature" and did not require specialized certifications. [Id. at ¶ 5.]

Colonel Novotny knew, prior to Plaintiff's termination, that Plaintiff had serious health issues, but Colonel Novotny was not aware that Plaintiff's work was affected by those health issues. Colonel Novotny understood Plaintiff's work performance to be good. Further, Colonel Novotny was not aware Plaintiff had ever sought accommodation for a disability or otherwise engaged in protected activity opposing discrimination. [Def.'s CSOF at ¶ 9; Pltf.'s CSOF at ¶ 9 (disputing Def.'s ¶ 9 only "as to whether Plaintiff's age, race, and medical condition, or prior protected activity played a role in the determination he was not mission critical").]

Plaintiff's "first contact with an EEO counselor came on March 29, 2013, after his termination." [Def.'s CSOF at ¶ 10; Pltf.'s CSOF at ¶ 10 (admitting Def.'s ¶ 10).] Plaintiff told the EEO counselor that: on February 5, 2013, he received notice that reemployed annuitants within the QA office would be terminated; and, on March 8, 2013, he was terminated. [Helper Decl., Exh. 4 (EEO Counselor's Report) at 13.]

III. **The Motion**

In the instant Motion, Defendant argues all of Plaintiff's claims, except for his claims based on his termination should be dismissed because he failed to exhaust his administrative remedies. As to any claim that is not dismissed, Defendant seeks summary judgment on the merits.

**DISCUSSION**

I. **Dismissal - Exhaustion of Administrative Remedies**

Both the Rehab Act and Title VII require a plaintiff to exhaust his administrative remedies prior to filing suit.[2] Martinez v. Stackley, CIV. NO. 16-00475 HG-RLP, 2018 WL 1093810, at *8 (D. Hawai`i Feb. 28, 2018) (citing Vinieratos v. United States, 939 F.2d 762, 768 n.5 (9th Cir. 1991)).

A. **Failure to Accommodate Plaintiff's Disability**

In evaluating the portion of Defendant's Motion seeking dismissal of Plaintiff's claim alleging failure to provide reasonable accommodations for his disability, the Court assumes the ergonomic chair requested upon Plaintiff's return to work and the workload reduction requested in the 6/29/12 Email were

---

[2] "Federal employees may make a disability discrimination claim pursuant to Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, which incorporates the types of discrimination claims available under the Americans with Disabilities Act." Martinez v. Stackley, CIV. NO. 16-00475 HG-RLP, 2018 WL 1093810, at *10 (D. Hawai`i Feb. 28, 2018) (citing Boyd v. U.S. Postal Serv., 752 F.2d 410, 413-14 (9th Cir. 1985)).

reasonable and necessary to accommodate Plaintiff's disability.

See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007))).

As to the exhaustion requirement applicable to a federal employee's EEO claims:

> This Court has explained that failure to contact a counselor within the required time frame can be dispositive:
>
>> 29 C.F.R. § 1614.105(a)(1) requires a federal employee who believes that she has been subjected to . . . discrimination in the workplace to initiate contact with an EEO counselor within forty-five days of the alleged discrimination. The forty-five day period, however, is "subject to waiver, estoppel and equitable tolling." See 29 C.F.R. § 1614.604(c). If waiver, estoppel or equitable tolling does not apply, failure to comply with § 1614.105(a)(1) is "fatal to a federal employee's discrimination claim in federal court." Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch, 572 F.3d 1039, 1043 (9th Cir. 2009) (citations and internal quotation marks omitted).
>
> Marugame v. Napolitano, Civil No. 11-00710 LEK-BMK, 2013 WL 4608079, at *9 (D. Hawai`i Aug. 28, 2013).
>
> While timely filing of an administrative complaint is "not a jurisdictional prerequisite to suit in federal court," it is a necessary requirement, "subject to waiver, estoppel and equitable tolling." "Equitable estoppel focuses

10

on the defendant's wrongful actions preventing the
plaintiff from asserting his claim." <u>Leong v.
Potter</u>, 347 F.3d 1117, 1123 (9th Cir. 2003).
"Equitable tolling focuses on a plaintiff's
excusable ignorance and lack of prejudice to the
defendant." <u>Id.</u>

<u>Banks v. McHugh</u>, Civil No. 11-00798 LEK-KSC, 2014 WL 2932479, at

*2 (D. Hawai`i June 30, 2014) (alteration in <u>Banks</u>). In <u>Banks</u>,

this Court found the plaintiff had "failed to exhaust her

administrative remedies" because she had "not contact[ed] an EEO

counselor before the required deadline." <u>Id.</u> at *4.

Plaintiff fails to allege he contacted an EEO counselor

within forty-five days of either the delay of the ergonomic chair

following his return to work in August 2010 or the response to

the 6/29/12 Email. To the extent Plaintiff asserts claims for

failure to reasonably accommodate his disability based on these

incidents, those fail to state plausible claims for relief

because Plaintiff fails to allege he contacted an EEO counselor

within forty-five days of the respective incidents. Those claims

must therefore be dismissed. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 ("To

survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" (quoting <u>Twombly</u>, 550 U.S. at

570)).

Plaintiff admits he first contacted an EEO counselor on

March 29, 2013 – much more than forty-five days after these

incidents. <u>See</u> Def.'s CSOF at ¶ 10; Pltf.'s CSOF at ¶ 10.

Because it is clear that any amendment would be futile, the portion of Plaintiff's claims alleging failure to accommodate his disability must be dismissed with prejudice.  See Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty., 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." (brackets, citation and internal quotation marks omitted)).

### B.   Hostile Work Environment

At the hearing on the Motion, Plaintiff argued his hostile work environment claims are timely because he timely contacted an EEO counselor about at least one act which was part of the hostile work environment:  his termination.  This argument fails.

"A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'"  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002).[3]  Discharging an employee is an example of a discrete act.  Id. at 111.  This district court has stated the analysis of a hostile work environment claim requires sorting out alleged discrete acts of discrimination,

---

[3] National Railroad was superseded on other grounds by the Lily Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5.  See, e.g., Morgan v. City of Ripley, No. 2:17-cv-02896-TLP-cgc, 2018 WL 3639833, at *3 (W.D. Tenn. July 31, 2018).

and then consider[ing] only the non-discrete acts
in determining whether the [hostile work
environment] claim [is] timely.  [<u>Porter v. Cal.
Dep't of Corr.</u>, 419 F.3d 885,] 893–94 [(9th Cir.
2005)].  <u>Porter</u> colorfully explained:

> [W]e refuse to mix recent discrete acts like
> tinder with the planks of ancient sexual
> advances and then, regardless of whatever it
> was that set the spark in the furnace, call
> the fire that ignites therefrom a hostile
> environment.  If the flames of an allegedly
> hostile environment are to rise to the level
> of an actionable claim, they must do so based
> on the fuel of timely non-discrete acts.

<u>Id.</u> at 893. . . .

<u>Yonemoto v. Shinseki</u>, 3 F. Supp. 3d 827, 845 (D. Hawai`i 2014).
Even assuming the incidents involving the ergonomic chair and
6/29/12 Email contributed to a hostile work environment related
to Plaintiff's protected characteristics, Plaintiff's claims
based on those incidents are not timely because they occurred
more than forty-five days before Plaintiff contacted an EEO
counselor.  <u>See</u> <u>Banks</u>, 2014 WL 2932479, at *2.  The only timely
incident Plaintiff alleges – his termination – is a discrete act.
<u>See</u> <u>Nat'l R.R.</u>, 536 U.S. at 110.  Because Plaintiff fails to
allege any timely non-discrete acts, his hostile work environment
claims are untimely and must be dismissed.  <u>See</u> <u>Yonemoto</u>, 3 F.
Supp. 3d at 845.  Because any amendment would be futile,
Plaintiff's hostile work environment claims must be dismissed
with prejudice.

II.  **Summary Judgment - Hostile Work Environment**

Even assuming, *arguendo*, that Plaintiff's hostile work environment claims were timely exhausted, Defendant argues Plaintiff's claims fail on the merits.

> To establish a prima facie case for hostile work environment, Plaintiff must show that (1) Defendant subjected him to verbal or physical conduct because of his protected characteristic; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. Surrell [v. Cal. Water Serv. Co.], 518 F.3d [1097,] 1108 [(9th Cir. 2008)]. "Not every insult or harassing comment will constitute a hostile work environment." Ray v. Henderson, 217 F.3d 1234, 1245 (9th Cir. 2000). Both subjective and objective requirements must be satisfied by demonstrating that the plaintiff perceived the work environment to be hostile and that a reasonable person in the plaintiff's position would have perceived it as hostile. Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000).  In considering the objective hostility of a work environment, the court considers the totality of the circumstances including the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1113 (9th Cir. 2004).  "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." Nichols v. Azteca Rest. Enterprises, Inc., 256 F.3d 864, 872 (9th Cir. 2001).

Thomas v. Spencer, CIVIL NO. 15-00121 RLP, 2018 WL 3638080, at *13 (D. Hawai`i July 30, 2018).

14

## A.    Discrete Versus Non-discrete Acts

Plaintiff relies on two alternative theories to meet his burden to show he can establish a prima facie case for hostile work environment, but each fails.

First, Plaintiff relies on Defendant's allegedly repeated failure to reasonably accommodate his disability with respect to the ergonomic chair and the response to the 6/29/12 Email.  Denials of a request reasonable accommodations are "discrete acts — these events are actionable in and of themselves at the time of the occurrence."  See Yonemoto, 3 F. Supp. 3d at 843 & n.6 (some citations omitted) (citing Cherosky v. Henderson, 330 F.3d 1243, 1245 (9th Cir. 2003)).  As previously noted, Plaintiff's allegedly wrongful termination was also a discrete act.  Plaintiff's hostile work environment claims fail as a matter of law because Plaintiff has adduced no evidence of "'timely non-discrete acts.'"  See id. at 845 (quoting Porter, 419 F.3d at 893).

## B.    Severe and Pervasive Conduct

Second, Plaintiff argues that, if the incidents regarding the delay of the ergonomic chair and the 6/29/12 Email did not give rise to standalone claims for failure to provide reasonable accommodations, they are non-discrete acts supporting his hostile work environment claims.  This Court has stated:

"The Supreme Court has held that '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.'" <u>Dominguez-Curry v. Nevada Transp. Dep't</u>, 424 F.3d 1027, 1034 (9th Cir. 2005) (alteration in <u>Dominguez-Curry</u>) (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

> "[T]he working environment must both subjectively and objectively be perceived as abusive." [<u>Fuller v. City of Oakland</u>, 47 F.3d 1522, 1527 (9th Cir. 1995)] (citing <u>Harris Forklift Sys., Inc.</u>, 510 U.S. 17, 20-21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). Objective hostility is determined by examining the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile. <u>Id.</u> Finally, to find a violation of Title VII, "conduct must be extreme to amount to a change in the terms and conditions of employment." <u>Faragher [v. City of Boca Raton</u>], 524 U.S. [775,] 788, 118 S. Ct. 2275 [(1998)]; <u>see also</u> <u>Fuller</u>, 47 F.3d at 1527.

<u>Craig v. M & O Agencies, Inc.</u>, 496 F.3d 1047, 1055 (9th Cir. 2007). "Factors a court may consider are the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Nat'l R.R.</u>, 536 U.S. at 116 (citation and internal quotation marks omitted).

> Regarding claims of a hostile work environment, this Court has explained,

> > "Title VII is not 'a general civility code for the American workplace.'" <u>Jura</u>

> v. Cnty. of Maui, Civ. No. 11-00338
> SOM/RLP, 2012 WL 5187845, at *7 (D.
> Hawaii Oct. 17, 2012) (quoting Oncale v.
> Sundowner Offshore Servs., Inc., 523
> U.S. 75, 80, 118 S. Ct. 998, 140 L. Ed.
> 2d 201 (1998)).  Moreover, "'personal
> animosity is not the equivalent of sex
> [or race] discrimination,' and a
> plaintiff 'cannot turn a personal feud
> into a sex [or race] discrimination
> case.'"  Id. (quoting Succar v. Dade
> Cnty. Sch. Bd., 229 F.3d 1343, 1345
> (11th Cir. 2000)).

> Phillips v. Mabus, Civil No. 12-00384 LEK-RLP,
> 2013 WL 4662960, at *19 (D. Hawai`i Aug. 29, 2013)
> (alterations in Phillips).

Banks, 2014 WL 2932479, at *6 (alterations in Banks).  Plaintiff

fails to adduce evidence showing the incidents regarding the

delay of the ergonomic chair and the 6/29/12 Email were

"sufficiently severe or pervasive to alter the conditions of

[Plaintiff's] employment and create an abusive working

environment."  See id. (citation and internal quotation marks

omitted).  Therefore, under the facts of this case, even if

Defendant denied Plaintiff's requests because of Plaintiff's

protected characteristics, Plaintiff's hostile work environment

claims would still fail as a matter of law.

C.  **Conduct Based on Protected Characteristics**

Even if Plaintiff was subjected to sufficiently severe

and pervasive harassment to support a hostile work environment

claim, it order to establish a prima face case, Plaintiff must

17

also show he was subjected to this conduct because of his protected characteristics.

"[N]otifying an employer of a need for an accommodation triggers a duty to engage in an 'interactive process' through which the employer and employee can come to understand the employee's abilities and limitations, the employer's needs for various positions, and a possible middle ground for accommodating the employee." Snapp v. United Transp. Union, 889 F.3d 1088, 1095 (9th Cir. 2018). However, "there exists no stand-alone claim for failing to engage in the interactive process. Rather, discrimination results from denying an available and reasonable accommodation." Id.

Plaintiff argues: there is a genuine issue of fact as to whether Defendant should have known Plaintiff requested an ergonomic chair and workload reduction because of his disability; Defendant never engaged in the interactive process; therefore, there is at genuine issue of fact as to whether Plaintiff was subjected to a disability-related hostile work environment. [Mem. in Opp. at 18-23.] This Court disagrees. Plaintiff cannot directly assert a claim for Defendant's alleged failure to engage in the interactive process. See Snapp, 889 F.3d at 1095. Aside from Defendant's alleged failure to engage in the interactive process, Plaintiff adduces no evidence he was subjected to a disability-related hostile work environment. Without more,

Plaintiff is merely asserting a stand-alone claim for failure to engage in the interactive process under the guise of a hostile environment claim. This he cannot do. See id.

Plaintiff fails to show there is a genuine issue as to whether he was subjected to conduct because of any protected characteristics. Therefore, this Court finds that there are no genuine issues of material fact and, even if the claims had not been dismissed, Defendant would be entitled judgment as a matter of law on Plaintiff's hostile work environment claims. See Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

## III. **Plaintiff's Termination**

Plaintiff asserts that, under the McDonnell Douglas analysis, his race discrimination, disability discrimination, age discrimination, and retaliation claims should survive summary judgment. This Court has stated:

> The framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), begins by requiring a plaintiff to establish a prima facie case of discrimination. The degree of proof required to establish a prima facie case for summary judgment is minimal. See Coghlan v. Am. Seafoods Co., 413 F.3d 1090, 1094 (9th Cir. 2005). A prima facie case of disparate treatment requires a plaintiff to establish that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position in issue; (3) the plaintiff suffered an adverse employment

decision; and (4) one or more employees outside the protected class with comparable qualifications and work records did not suffer similar adverse employment decisions. <u>See, e.g.</u>, <u>White v. Pac. Media Grp., Inc.</u>, 322 F. Supp. 2d 1101, 1110 (D. Haw. 2004).

A plaintiff must demonstrate that his or her situation is similar in all material respects to that of employees who received more favorable treatment. <u>See</u> <u>Moran v. Selig</u>, 447 F.3d 748, 755 (9th Cir. 2006). However, "a plaintiff is not obligated to show disparate treatment of an **identically** situated employee." <u>McGuinness v. Lincoln Hall</u>, 263 F.3d 49, 54 (2d Cir. 2001) (cited approvingly in <u>Selig</u>). Instead, "individuals are similarly situated when they have similar jobs and display similar conduct." <u>Hawn v. Exec. Jet Mgmt. Inc.</u>, 615 F.3d 1151, 1160 (9th Cir. 2010).

Under the <u>McDonnell Douglas</u> framework, once a plaintiff succeeds in presenting a prima facie case, the burden then shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for its employment decision. <u>Noyes v. Kelly Servs.</u>, 488 F.3d 1163, 1168 (9th Cir. 2007). "Should the defendant carry its burden, the burden then shifts back to the plaintiff to raise a triable issue of fact that the defendant's proffered reason was a pretext for unlawful discrimination." <u>Id.</u>

<u>Li v. City & Cty. of Honolulu</u>, CIVIL 14-00573 LEK-RLP, 2017 WL 3015827, at *5–6 (D. Hawai`i July 14, 2017) (emphasis in <u>Li</u>) (some citations omitted). The <u>McDonnell Douglas</u> analysis also applies to Title VII retaliation claims, <u>id.</u> at *14 (some citations omitted) (citing <u>Vasquez v. County of Los Angeles</u>, 349 F.3d 634, 640 (9th Cir. 2003)), as well as ADEA and Rehab Act claims, <u>Smith v. Clinton</u>, Civil No. 10-00587 LEK-BMK, 2011 WL 3290522, at *9 (D. Hawai`i July 31, 2011).

20

A. **Protected Activity**

The Court first turns to Plaintiff's retaliation claim.

> "The elements of a prima facie retaliation claim
> are, (1) the employee engaged in a protected
> activity, (2) she suffered an adverse employment
> action, and (3) there was a causal link between
> the protected activity and the adverse employment
> action." Davis v. Team Elec. Co., 520 F.3d 1080,
> 1093-94 (9th Cir. 2008). "Protected activity
> includes the filing of a charge or a complaint, or
> providing testimony regarding an employer's
> alleged unlawful practices, as well as engaging in
> other activity intended to oppose an employer's
> discriminatory practices." Raad v. Fairbanks N.
> Star Borough Sch. Dist., 323 F.3d 1185, 1197 (9th
> Cir. 2003) (brackets, citation, and internal
> quotation marks omitted).

Li, 2017 WL 3015827, at *14. Further, "a request for a

reasonable accommodation is protected activity." Pfeffer v.

Hilton Grand Vacations Co., LLC, No. CV. 07-00492 DAE-BAK, 2009

WL 37519, at *13 (D. Hawai`i Jan. 7, 2009) (citing Pardi v.

Kaiser Foundation Hosps., 389 F.3d 840, 850 (9th Cir. 2004);

McAlindin v. County of San Diego 192 F.3d 1226, 1238 (9th Cir.

1999)). Plaintiff contends he requested an ergonomic chair and a

workload reduction to accommodate his disability, and he was

terminated in retaliation for making those requests.

Plaintiff fails to show a genuine dispute of material

fact as to whether his request for an ergonomic chair was a

protected activity. When Plaintiff made his verbal request for

the ergonomic chair, he stated he needed it for a reason

unrelated to his disability and/or civil rights laws: "because

someone was playing with my chair, and it makes it very hard for me to adjust these things in the morning." [Helper Decl., Exh. 5 (excerpts of trans. of 1/12/15 depo. of Gerald D. Gipaya) at 51.] Plaintiff now states he requested the ergonomic chair because he had difficulty adjusting his non-ergonomic chair due to his disability. [Pltf.'s CSOF, Decl. of Gerald D. Gipaya ("Gipaya Decl.") at ¶ 6.] However, Plaintiff does not contend he told his employer that he requested the ergonomic chair because of his disability. Neither does Plaintiff contend he told his employer of a disability-related problem with his non-ergonomic chair. Plaintiff fails to show there is a genuine dispute of material fact as to whether his employer knew Plaintiff requested the chair because of his disability. Therefore, Defendant is entitled to summary judgment on the issue of whether Plaintiff's request for an ergonomic chair constituted a protected activity.

Plaintiff also fails to show a genuine dispute of material fact as to whether his request for a workload reduction in the 6/29/12 Email was a protected activity. The 6/29/12 Email makes no reference to Plaintiff's disability, and emphasizes reasons unrelated to Plaintiff's disability and/or the civil rights laws: Plaintiff's belief that he was unfairly doing more work than others and improperly doing work outside his job description. See 6/29/12 Email at 3. In deposition testimony, Master Sergeant Murphy stated he did not believe Plaintiff sent

the 6/29/12 Email because of his disability, and he was not aware
that Plaintiff had ever requested an accommodation because of his
disability.  [Pltf.'s CSOF, Decl. of Elbridge Z. Smith ("Smith
Decl."), Exh. 3 (excerpts of trans. of 1/9/15 depo. of
Albert Murphy ("Murphy Depo.")) at 84-85.]  Plaintiff points to
no contrary evidence.  Even considering that Master Sergeant
Murphy knew about Plaintiff's disability, the 6/29/12 Email does
not create a triable issue of fact as to whether Master Sergeant
Murphy believed the 6/29/12 Email was a request for a reasonable
accommodation of his disability.  See Villiarimo v. Aloha Island
Air, Inc., 281 F.3d 1054, 1065-66 n.10 (9th Cir. 2002) ("At
summary judgment, this court need not draw **all** possible
inferences in [the non-moving party's] favor, but only all
**reasonable** ones." (emphases in Villiarimo) (citing O.S.C. Corp.
v. Apple Computer, Inc., 792 F.2d 1464, 1466-67 (9th Cir. 1986)
("We scrutinize the **evidence** and **reasonable inferences** to
determine whether there is sufficient probative evidence to
permit 'a finding in favor of the opposing party based on more
than mere speculation, conjecture, or fantasy.'"))).

        Plaintiff fails to show a genuine dispute of material
fact as to whether he engaged in protected activity, with respect
to either the ergonomic chair, the 6/29/12 Email, or any other
incident.  Because there are no genuine disputes of material fact
and Plaintiff has failed establish a prima facie case of

retaliation, Defendant is entitled to judgment as a matter of law on Plaintiff's retaliation claim. Defendant's Motion is granted as to Plaintiff's retaliation claim.

**B.    Failure to Identified Similarly Situated
Employees who Were Treated More Favorably**

Turning to Plaintiff's disparate treatment claims, Plaintiff alleges that similarly situated employees who were not within Plaintiff's protected classifications were not terminated. To identify these similarly situated employees, Plaintiff points to a Report of Investigation prepared in response to his complaint to the United States Equal Employment Opportunity Commission ("EEOC" and "ROI"). [Smith Decl. at ¶ 2.h & Exh. 8 (excerpt of 10/31/13 EEOC Investigative File).] Of the five reemployed annuitants at Hickam, Horiuchi was the most similar to Plaintiff because they were both QA Specialists in the Fifteenth Maintenance Group. [Smith Decl., Exh. 8 at 2.] The other three were in other command groups and were a "General Engineer," a "Historian," and an "Air Refueling Planner." [Id.] Exceptions were approved to retain the other four reemployed annuitants, but no exception was sought for Plaintiff. [Id.] Nothing in the ROI indicates whether the other four reemployed annuitants had ever engaged in protected activity, nor is there any indication of their race, age, or disability status.

Plaintiff's counsel asserts that, of the five reemployed annuitants, only Plaintiff had a disability and prior protected EEO activity, [Pltf.'s CSOF at ¶ D,] and only Plaintiff was a Hawaiian/Pacific Islander, [Mem. in Opp. at 15]. Plaintiff points to no evidence in the current record to support these assertions, and otherwise adduces no direct or circumstantial evidence that he was terminated because of his race, disability, age, or prior protected activity.

## 1. Race Discrimination

On summary judgment, although a plaintiff's burden of persuasion to establish a prima facie case of discrimination under the McDonnell Douglas approach "is minimal," the plaintiff retains the burden of production. Coghlan, 413 F.3d at 1094. Because Plaintiff adduces no evidence that the other reemployed annuitants were not Hawaiian/Pacific Islander, he fails to carry his burden of production and does not establish the fourth element of his prima facie case under Title VII. See Li, 2017 WL 3015827, at *5. Defendant is therefore entitled to summary judgment on Plaintiff's claim that his termination constituted race discrimination in violation of Title VII.

## 2. Disability Discrimination

A prima facie case of disability discrimination under the Rehab Act includes proof that the plaintiff "was discriminated against solely due to his disability." Flores v.

25

<u>United States</u>, CIVIL NO. 16-00579 DKW-KSC, 2016 WL 6609175, at *5 (D. Hawai`i Nov. 8, 2016) (citing <u>Mustafa v. Clark County Sch. Dist.</u>, 157 F.3d 1169, 1174 (9th Cir. 1998)).  Because Plaintiff has adduced no evidence showing the other reemployed annuitants were not disabled, he fails to establish a prima facie case that he was terminated because of his disability in violation of the Rehab Act.  Defendant is therefore entitled to summary judgment on Plaintiff's claim that his termination constitutes disability discrimination in violation of the Rehab Act.

### 3. <u>Retaliation</u>

Even if Plaintiff identified a triable issue of fact as to the issue of whether he engaged in protected activity, Defendant would still be entitled to summary judgment as to Plaintiff's retaliation claim because Plaintiff failed to show that any of the other reemployed annuitants had not engaged in protected activity.  Thus, Plaintiff cannot establish the causation element of his prima facie case based on similarly situated employees who were treated more favorably than he was.

Aside from identifying similarly situated employees who were treated more favorably, "[t]he causal link can [also] be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action."  <u>Dawson</u>

<u>v. Entek Int'l</u>, 630 F.3d 928, 936 (9th Cir. 2011). This district

court has stated:

> The Ninth Circuit Court of Appeals has
> generally required temporal proximity of less than
> three months between the protected activity and
> the adverse employment action for the employee to
> establish causation based on timing alone.
> <u>Yartzoff v. Thomas</u>, 809 F.2d 1371, 1376 (9th Cir.
> 1987). The appellate court has held that a five
> month gap between actions, by itself, is
> insufficient evidence to infer causation for a
> retaliation claim. <u>Brown v. Dep't of Public
> Safety</u>, 446 Fed. Appx. 70, 73 (9th Cir. 2011);
> <u>Pickens v. Astrue</u>, 252 Fed. Appx. 795, 797 n.2
> (9th Cir. 2007); <u>see</u> <u>Fazeli v. Bank of America,
> NA</u>, 525 Fed. Appx. 570, 571 (9th Cir. 2013)
> (finding less than three months was insufficient
> to infer causation when there was other evidence
> that no causal link existed).

<u>Mahoe v. Operating Eng'rs Local Union No. 3 of the Int'l Union of

Operating Eng'rs, AFL-CIO</u>, Civ. No. 13-00186 HG-BMK, 2014 WL

6685812, at *8 (D. Hawai`i Nov. 25, 2014). The delay of the

ergonomic chair request occurred over two years before Plaintiff

was terminated. The 6/29/12 Email incident occurred over seven

months before Plaintiff was terminated. Even assuming these

incidents involved protected activities, Plaintiff cannot

establish the causation element of a prima facie case of

retaliation based on the timing of these incidents alone.

Further, Plaintiff presents no "evidence of a pattern of

antagonism following the protected conduct[, which] can also give

rise tot he inference" of causation. <u>See</u> <u>Porter</u>, 419 F.3d at

895. Plaintiff has not adduced any other evidence sufficient to

establish the causation element of a prima facie retaliation claim. There are no genuine issues of material fact and Defendant would be entitled to judgment as a matter of law because Plaintiff has failed to establish the causation element of his retaliation claim.

### 4.  **Age Discrimination**

Regarding the ADEA, this Court has stated:

> To assert a wrongful termination claim under the ADEA for age discrimination, a plaintiff must make a prima facie showing that he was:
>
> (1) a member of a protected class [age 40-70];
>
> (2) performing his job in a satisfactory manner;
>
> (3) discharged; and
>
> (4) replaced by a substantially younger employee with equal or inferior qualifications.
>
> Nidds v. Schindler Elevator Corp., 113 F.3d 912, 917 (9th Cir. 1996) (alteration in original) (citations omitted).

Smith, 2011 WL 3290522, at *20.

Plaintiff represents that "the person hired to fill [his] vacated position, upon belief, would have been considerably younger than [him]," but he argues, "[w]ithout discovery, [he] is at a disadvantage here," and he notes that Defendant did not assert that Plaintiff's position was not filled by a younger person. [Mem. in Opp. at 16 & n.3.] Plaintiff's arguments,

28

which he failed to support with citations to evidence in the
current record, do not help Plaintiff meet his burden to produce
evidence establishing a prima facie case of discrimination.  See
Joe Hand Promotions, Inc. v. Chalfont, Civil No. 14-00129
SOM/BMK, 2015 WL 4714087, at *3 (D. Hawai`i Aug. 6, 2015)
("Although only admissible evidence may be considered in deciding
a motion for summary judgment, see Orr v. Bank of Am., NT & SA,
285 F.3d 764, 773 (9th Cir. 2002), the proper focus is not on the
admissibility of the evidence's form, but on the admissibility of
its contents." (citing Fraser v. Goodale, 342 F.3d 1032, 1036
(9th Cir. 2003))).  Further, although it is not entirely clear,
Plaintiff appears to be arguing that this Court should not rule
on Plaintiff's ADEA claim because he has not had sufficient
opportunity to conduct discovery.

> Rule 56(d) states that, after a motion for
> summary judgment is filed, "if a nonmovant shows
> by affidavit or declaration that, for some
> specified reasons, it cannot present facts
> essential to justify its opposition, the court
> may: (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or
> declarations or to take discovery; or (3) issue
> any other appropriate order."  Fed. R. Civ.
> P. 56(d).  In 2010, Rule 56 was amended, and the
> advisory committee noted, "Subdivision (d) carries
> forward without substantial change the provisions
> of former subdivision (f)."  Fed. R. Civ. P. 56(d)
> advisory comm. n.  Accordingly, the earlier case
> law on Rule 56(f) applies.

> Rule 56(d) permits a district court to
> continue a summary judgment motion "upon a good
> faith showing by affidavit that the continuance is
> needed to preclude summary judgment."  California

> v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998).  A
> party requesting a continuance bears the burden of
> (1) filing a timely application that specifically
> identifies relevant information; (2) demonstrating
> that there is some basis to believe that the
> information sought exists; and (3) establishing
> that such information is essential to resist the
> summary judgment motion.  See Emp'rs Teamsters
> Local Nos. 175 & 505 Pension Trust Fund v. Clorox
> Co., 353 F.3d 1125, 1130 (9th Cir. 2004) (citation
> omitted); accord Moss v. U.S. Secret Serv., 572
> F.3d 962, 966 n.3 (9th Cir. 2009) ("Rule 56([d])
> requires a party seeking postponement of a summary
> judgment motion to show how additional discovery
> would preclude summary judgment and why it cannot
> immediately provide specific facts demonstrating a
> genuine issue of material fact." (punctuation,
> quotations, and citations omitted)).

Noetzel v. Hawaii Med. Serv. Ass'n, CIVIL NO. 15-00310 SOM-KJM,

2017 WL 690531, at *1 (D. Hawai`i Feb. 21, 2017) (alteration in

Noetzel).  Plaintiff's reference to a need for further discovery

is insufficient to support a Rule 56(d) continuance.  Plaintiff's

belief that further discovery would allow him to "show that . . .

a substantially younger person" filled his position is

insufficient to establish a prima facie case of age

discrimination.  See Smith, 2011 WL 3290522, at *20.  Plaintiff

has therefore failed to make out a prima facie case of age

discrimination.  There are no genuine issues of material fact,

and Defendant is entitled to judgment as a matter of law on

Plaintiff's claim that his termination violated the ADEA.

C.  **Employer's Legitimate, Non-Discriminatory Reason**

Even assuming Plaintiff had established a prima facie

case of discrimination, on any theory, or at least raised a

30

triable issue of fact (neither of which he has done), Colonel

Novotny stated Plaintiff was terminated because:

> I determined that Mr. Gipaya was not mission
> critical.  His work was more administrative in
> nature . . . essentially, investigating incidents
> in which damage had occurred to airplanes . . . .
> These tasks did not require specialized
> certifications.  I believed that military
> personnel could absorb these duties and
> Mr. Gipaya's other assignments without causing a
> manpower shortage that would threaten the
> mission. . . .  Losing Mr. Gipaya would not
> directly impact the ability of planes to fly.

[Novotny Decl. at ¶ 5.]  Thus, Defendant has met its burden "to

articulate some legitimate, nondiscriminatory reason for the

challenged action," *i.e.*, for terminating Plaintiff.  See

Villiarimo, 281 F.3d at 1062 (citing McDonnell Douglas, 411 U.S.

at 802, 93 S. Ct. 1817).

**D.    Pretext**

Because Defendant has articulated a legitimate,

nondiscriminatory reason for terminating him, Plaintiff must show

Defendant's reason was a pretext for discrimination, or at least

show that there is a genuine issue of fact as to pretext.  See

Villiarimo, 281 F.3d at 1062.  A plaintiff may show

> the [defendant's] articulated reason [was]
> pretextual "either directly by persuading the
> court that a discriminatory reason more likely
> motivated the employer or indirectly by showing
> that the employer's proffered explanation is
> unworthy of credence."  Chuang v. University of
> California Davis, 225 F.3d 1115, 1123 (9th Cir.
> 2000) (quoting Texas Dep't of Cmty. Affairs v.
> Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L.
> Ed. 2d 207 (1981)).  Although a plaintiff may rely

> on circumstantial evidence to show pretext, such
> evidence must be both specific and substantial.
> <u>See</u> <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217,
> 1222 (9th Cir. 1998).

<u>Id.</u> (some alterations in <u>Villiarimo</u>).  In evaluating whether

Defendant's proffered justification for terminating Plaintiff was

pretextual, "it is not important whether [the justification was]

**objectively** false . . . .  Rather, courts only require that an

employer honestly believed its reason for its actions, even if

its reason is foolish or trivial or even baseless."  <u>See</u> <u>id.</u> at

1063 (emphasis in <u>Villiarimo</u>) (citation and internal quotation

marks omitted).

Plaintiff argues pretext is shown because, in the

incident regarding the 6/29/12 Email, Master Sergeant Murphy

"purposely withheld the information that [Plaintiff] could have a

disability."  [Mem. in Opp. at 30.]  In support, Plaintiff points

to deposition testimony, in which Master Sergeant Murphy stated

that, when he sought guidance on how to respond to the 6/29/12

Email, he did not tell the human resources officer that Plaintiff

had suffered a stroke "because . . . that's none of her concern."

[Murphy Depo. at 80.]  This simply does not show Master Sergeant

Murphy harbored disability-related animus against Plaintiff, and

does not create a triable issue of fact as to whether the Air

Force's reason for terminating Plaintiff was pretextual.

Moreover, Plaintiff would still fail to show "the
employer's proffered explanation is unworthy of credence," even
assuming Plaintiff had shown Master Sergeant Murphy made the
decision to authorize a mission critical waiver for Horiuchi but
not Plaintiff, and even assuming Master Sergeant Murphy believed
he could not authorize waivers for both Horiuchi and Plaintiff.
See Villiarimo, 281 F.3d at 1062 (citation and internal quotation
marks omitted).  Colonel Novotny stated he determined Horiuchi
was mission critical because he was

> responsible for evaluating the maintenance
> performed by the Fuels Systems Maintenance Shop,
> which was responsible for the essential task of
> ensuring that aircraft fuel systems worked
> properly.  The position required fuel systems
> maintenance expertise, and special
> certifications . . . .  In short, without
> Mr. Horiuchi in that position, there was a real
> danger that planes would not be available to fly
> missions.

[Novotny Decl. at ¶ 4.]  Even assuming Colonel Novotny merely
ratified Master Sergeant Murphy's decision, Plaintiff presents no
evidence that Master Sergeant Murphy's view that only Horiuchi
was mission critical was false or pretextual.  Plaintiff merely
states he had the certifications necessary to perform Horiuchi's
duties.  [Gipaya Decl. at ¶ 4.]  Even if true, that does not show
the Air Force's proffered reason for terminating Plaintiff was
false or pretextual.  The Air Force's proffered reason for
terminating Plaintiff and not Horiuchi is that only Horiuchi's

**job** was mission critical, not that only Horiuchi was **capable** of performing a mission critical job.

The Directive required Air Force components to separate "[a]ll temporary and term employees (including reemployed annuitants), not considered mission critical." [Helper Decl., Exh. 1 at 1.] The Directive contains no criteria for evaluating whether an employee is mission critical. Apparently, the Air Force viewed the Directive as unprecedented. See id. at 2 ("These are unchartered waters concerning the federal budget . . . . It is imperative we work closely together to balance mission needs and minimize impacts to our dedicated civilian employees and their families."). Plaintiff argues the lack of specific criteria showing shows the Air Force's justification for terminating Plaintiff to be pretextual. [Mem. in Opp. at 28.] This Court disagrees. It was not manifestly unreasonable for the Air Force to provide decision-makers on each base with discretion, rather than rigid criteria, to determine who is mission critical. Further, even if that management decision were "foolish," that alone does not show pretext: Plaintiff must show the Air Force did not "honestly believe[] its reason for its actions." See Villiarimo, 281 F.3d at 1063 (citation and quotation marks omitted).

Specifically, Plaintiff must show the Air Force did not "honestly believe[]" that terminating him was appropriate under

the Directive.  See id.  Plaintiff attempts to make this showing
by adducing evidence that:  1) it was Master Sergeant Murphy who
decided only Horiuchi, and not Plaintiff, would receive a mission
critical waiver, and Colonel Novotny merely ratified the Master
Sergeant's decision; [Smith Decl., Exh. 5 (excerpts of trans. of
1/8/15 depo. of Major Mark Rardin) at 26;] and 2) Master Sergeant
Murphy believed management should select at least one reemployed
annuitant to be terminated, so that senior officers would be more
likely to approve mission critical waiver requests for the
remainder, [Murphy Depo. at 51-53].  Even assuming Plaintiff has
shown there is a genuine issue of fact as to how the Air Force
approached its decision about which reemployed annuitants would
be terminated, this alone falls short of the sort of
circumstantial evidence, which "must be both specific and
substantial," sufficient to show pretext.  See Villiarimo, 281
F.3d at 1062.  Moreover, the explanation that Plaintiff fell
short of an absolute standard for being mission critical is not
incompatible with the explanation that Plaintiff was less mission
critical than Horiuchi.  See id. at 1063 (citing Nidds v.
Schindler Elevator Corp., 113 F.3d 912, 918 (9th Cir. 1997)
(holding, in context of retaliation, that the presence of
"shifting" or different justifications for an adverse action is
not sufficient to defeat summary judgment when those
justifications "are not incompatible")).

Finally, Plaintiff contends pretext is shown because Plaintiff's job was mission critical. In support, Plaintiff points out that, after Plaintiff was terminated on March 9, 2013, another civilian filled his position on August 23, 2013. [Smith Decl., Exh. 8 at 2.] This simply does not show pretext. To the contrary, the fact that Plaintiff's position could go unfilled for over five months suggests it was not mission critical.

The Court has also considered what significance, if any, there is to the fact that one of the four reemployed annuitants retained as mission critical was classified as a "Historian." [Id.] Plaintiff mentions this as a background fact, but not in his argument. [Mem. in Opp. at 4.] Plaintiff does not contend the retention of a historian shows any material fact is in dispute. See generally Def.'s CSOF; Pltf.'s CSOF. The Court is therefore not obliged to consider this issue further. See Local Rule LR56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). However, for the sake of completeness, the Court notes that Plaintiff has adduced no evidence to establish that the historian was outside any of the protected classes at issue in this case.

Plaintiff fails to show there is a genuine dispute of material fact as to whether Defendant's nondiscriminatory reason

for terminating Plaintiff was pretextual. Therefore, even assuming Plaintiff had made out a prima facie case that his termination was unlawful discrimination because of age, race, disability status, prior protected activity, or any other characteristic, Defendant would still be entitled to judgment as a matter of law. The Court grants summary judgment in favor of Defendants as to Plaintiff's race, age, and disability discrimination claims based on his termination.

## CONCLUSION

On the basis of the foregoing, Defendant's Motion for Dismissal and Summary Judgment, filed May 2, 2018, is HEREBY GRANTED. Specifically, Plaintiff's claim alleging a failure to provide reasonable accommodations for his disability and his hostile work environment claims are DISMISSED WITH PREJUDICE; and summary judgment is GRANTED in favor of Defendant as to all of Plaintiff's remaining claims.

There being no other claims in this case, the Clerk's Office is DIRECTED to enter final judgment in favor of Defendant and close the case immediately.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 28, 2018.



                         /s/ Leslie E. Kobayashi
                        Leslie E. Kobayashi
                        United States District Judge

**GERALD D. GIPAYA VS. DEPARTMENT OF THE AIR FORCE, ET AL; CV 17-00502 LEK-KSC; ORDER GRANTING DEFENDANT'S MOTION FOR DISMISSAL AND SUMMARY JUDGMENT**